**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

**ROBERT CLOUGH II**, on behalf of himself and all others similarly situated,

Plaintiff,

v.

**FURNISHED FINDER, LLC**,

Defendant

Case No. 1:26-cv-00397-PB-AJ

# PROTOCOL FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION

The parties in the above-captioned action shall abide by the following protocol for the production of electronically stored information ("ESI") and paper documents. Subject to any protective order entered in this action, this Protocol governs all document productions in this matter. Its purpose is to facilitate the just, speedy, and inexpensive completion of discovery and, whenever possible, the early resolution of disputes concerning ESI without Court intervention.

Nothing in this Protocol limits a party's right to seek or object to discovery under the Federal Rules of Civil Procedure or any applicable order, or to object to the authenticity or admissibility of any document or ESI produced under this Protocol. If the parties encounter an issue concerning the disclosure of ESI under this Protocol, including a substantial delay in producing ESI, they shall meet and confer in good faith and may amend the Protocol by agreement or seek appropriate relief from the Court.

## A. DEFINITIONS

"ESI" means computer-generated information or data of any kind stored in any medium from which information may be obtained directly or, if necessary, after translation by the Producing Party into a reasonably usable form.

"Document Family" means a group of related documents that includes parent and child documents.

"Duplicate ESI" means files that are exact duplicates based on MD5 or SHA-1 hash values. For emails with attachments, the hash value shall be generated based on the parent-child grouping, and messages shall be considered duplicates only when the parent document and all attachments are exact duplicates. Attachments shall not be eliminated as duplicates unless the parent email and all attachments are also duplicates.

"Native Format" means the format of ESI in the application in which it was originally created.

"OCR" means optical-character-recognition technology used to read paper documents or electronic images and produce searchable text.

"PDF" means Portable Document Format.

"Producing Party" means a party that produces documents in this action.

"Receiving Party" means a party to whom documents are produced in this action.

"Searchable PDF" means a PDF file containing electronically searchable text, whether derived from the original electronic document, text extraction, or OCR.

## B. GENERAL PROVISIONS

### 1. <u>Form of Production</u>

Except as otherwise provided below, documents and ESI shall be produced as Searchable PDF files. Each document shall be produced as a separate PDF file and shall retain its original

document boundaries. Distinct documents shall not be combined into a single PDF, and a single document shall not be divided into multiple PDFs. Emails and their attachments shall be produced as separate documents, with the attachments immediately following the parent email. The relationship between an email and its attachments shall be reasonably apparent from the order of production, the filenames, an index, or another reasonably usable method.

**2. <u>Documents Produced in Native Format</u>**

The following materials shall be produced in Native Format when conversion to PDF would materially impair their usefulness or omit relevant information:

a. Spreadsheets, including Excel and CSV files;
b. Audio and video files;
c. Call recordings and voicemail recordings;
d. Structured data exported from a CRM, dialing platform, telephony platform, call-management system, lead-management system, text-messaging platform, or other database;
e. Documents containing formulas, hidden columns, hidden rows, multiple worksheets, tracked changes, comments, or other information that cannot reasonably be displayed in a PDF; and
f. Any other document that cannot reasonably be reviewed or understood in PDF format.

A document produced in Native Format shall retain its original file extension. If a Receiving Party believes that a specifically identified document produced as a PDF cannot reasonably be reviewed or used in that format, the Receiving Party may request production of that document in Native Format. The parties shall meet and confer in good faith concerning the request.

**3. <u>Bates Stamping</u>**

The Producing Party shall assign a unique Bates number to each page of every document produced as a PDF. Files produced in Native Format shall be assigned a single Bates number corresponding to the accompanying placeholder PDF. The native file shall be named using that Bates number and its original file extension.

**4. Privilege and Work Product Claims**

For documents redacted or withheld from production on the basis of the Health Insurance Portability and Accountability Act ("HIPAA") or the attorney-client privilege or the work product doctrine, the Producing Party will provide a log of the privilege material for each production, in an electronically searchable format (e.g., Excel or PDF), containing, for each document claimed as privileged, a description of the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

**5. Redactions**

A Producing Party may redact information protected by the attorney-client privilege, work-product doctrine, another applicable privilege or protection, an applicable protective order, or governing law. The basis for each redaction shall be clearly identified on the face of the document.

A Producing Party may also redact personal or confidential information of nonparties that is unrelated to the claims or defenses in this action, provided that the redaction does not remove information necessary to understand the document or determine whether it is responsive. When information is redacted from a document produced in Native Format, the Producing Party may produce a reasonably usable redacted copy in PDF, Excel, CSV, or another appropriate format.

**6. Inadvertent Production**

The production of privileged or work-product protected documents, electronically stored information ("ESI") or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding if, after learning of such disclosure, the Producing Party promptly gives notice either in writing, or

later confirmed in writing, to the Receiving Party that such information was inadvertently produced and requests that the Receiving Party return or destroy the original data. Absent a challenge under this paragraph or during the pendency of any such challenge, or contemplated challenge, the Receiving Party shall return all such material, including copies, to the Producing Party promptly upon receipt of the written notice and request for return. In addition, absent a challenge or following an unsuccessful challenge under this paragraph, the Producing Party shall be entitled to an order under Federal Rule of Evidence 502(d) that the privilege or protection was not waived by disclosure. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness and/or segregation of privileged information before production.

**7. <u>Email Threading</u>**

In producing emails, the Producing Party will employ email threading to eliminate earlier or incomplete chains of emails and produce only the most complete iteration of an email chain. As used in this Protocol, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. Any de-duplication tool used by a Party must ensure that an email will be suppressed only if its recipients (including cc and bcc recipients), subject, body text (excluding specified automatic footers and normalized to consolidate white space) and attachments are wholly included in another more complete email. For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered duplicates.

**8. Avoidance of Duplicate Production**

The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files and across all custodians). De-duplication shall not break apart families and shall be performed at a family level.

**SO ORDERED**

Dated: September 30, 2026

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge